UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Ibsa Aliyi Mussa**,<br><br>Plaintiff,<br><br>vs.<br><br>**Officer Mukhtar Abdulkadir**,<br>   in his individual and official capacities,<br>**Officer Yang**,<br>   in his individual and official capacities, and<br>**City of Minneapolis**,<br><br>Defendants. | Court File No.<br><br>**COMPLAINT WITH<br>JURY DEMAND** |

## INTRODUCTION

1. This is an action for money damages and declaratory relief brought pursuant to 42 U.S.C. §§ 1983, 1988, 2000d, and 3789d, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and under the common law and statutes of the State of Minnesota, against Officer Mukhtar Abdulkadir and Officer Yang, police officers of the City of Minneapolis, in their individual and official capacities, and against the City of Minneapolis.

2. It is alleged that the individual Police Officer Defendants retaliated against Plaintiff Ibsa Mussa for exercising his right to free speech, thereby violating his rights under the First Amendment to the United States Constitution. It is also alleged that the Defendant Officers made an unreasonable seizure of the person of Ibsa Mussa, violating his rights under the Fourth Amendment to the United States Constitution. It is further alleged that these

Defendants assaulted and battered Ibsa Mussa, inflicted intentional and negligent emotional distress upon Ibsa Mussa, and falsely imprisoned Ibsa Mussa. It is also alleged that these Defendant Officers discriminated against Ibsa Mussa based on his ethnicity or national origin, in violation of the Fourteenth Amendment Equal Protection Clause, 42 U.S.C. §§ 2000d and 3789d(c), and the Minnesota Human Rights Act. It is further alleged that these Defendant Officers committed a bias offense under Minn. Stat. § 611A.79. It is also alleged that these violations and torts were committed as a result of policies and customs of the City of Minneapolis.

## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

4. This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the County of Hennepin, Minneapolis, Minnesota.

## PARTIES

5. Plaintiff Ibsa Mussa was at all material times a resident of Minneapolis, Minnesota, and is of full age. Mr. Mussa is an Ethiopian immigrant.

6. Defendant Police Officers were at all times relevant to this complaint duly appointed and acting officers of the police department of the City of Minneapolis, acting under color of law,

to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Minneapolis.

7. The City of Minneapolis, Minnesota, is a municipal corporation and the public employer of the Defendant Police Officers. Defendant City of Minneapolis is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials, including Officers Abdulkadir and Yang.

## FACTS

8. On July 25, 2010, at approximately 9:15 p.m., Plaintiff Ibsa Mussa was riding his bicycle in the area of Cedar Avenue South and 5th Street in Minneapolis.

9. As he was riding his bike, Mr. Mussa saw Defendant Officers Abdulkadir and Yang pull up beside him in their squad. Officer Abdulkadir was the driver and Officer Yang was the passenger. Officers Abdulkadir and Yang had two young men in the back of their squad, M.A. and L.D.

10. Officer Abdulkadir exited the squad and instructed Mr. Mussa to get off his bike.

11. Mr. Mussa asked, "Why?" Officer Abdulkadir responded, "You don't have a light, get in the car." Mr. Mussa followed Officer Abdulkadir's instructions and got off his bike.

12. Officer Abdulkadir next handcuffed Mr. Mussa's hands behind his back and placed Mr. Mussa in the back of the Defendant Officers' Squad.

13. Mr. Mussa was placed in the far right passenger seat of the squad. M.A. and L.D. were sitting directly to Mr. Mussa's left.

14. Officer Abdulkadir then went to the front of the squad and sat in the driver's seat. Officer Yang remained in the front passenger seat of the squad.

15. Once inside the squad, Officer Abdulkadir asked Mr. Mussa for his name and additional information and started writing Mr. Mussa a citation for driving a bicycle without a light. Mr. Mussa was surprised that he was actually getting a ticket for such a minor violation and asked Officer Abdulkadir why he couldn't just give him a warning this time. Officer Abdulkadir responded, "I don't care."

16. Mr. Mussa then stated, "This is stupid," meaning that a warning would be sufficient in that situation. Officer Abdulkadir responded, "Are you calling me stupid?" Mr. Mussa replied, "I'm sorry," and explained that he did not call Officer Abdulkadir stupid but that he thought that it was unfair to give him a ticket for not having a light on his bicycle.

17. At this point, Officers Yang and Abdulkadir both exited the squad at the same time. Officer Yang walked to the rear passenger side of the squad and opened the rear right passenger door where Mr. Mussa was sitting. Mr. Mussa was still handcuffed with his hands behind his back at this time.

18. Immediately thereafter, Officer Abdulkadir walked up to Mr. Mussa and yelled, "You call me stupid?" Officer Abdulkadir then reached inside the squad, grabbed Mr. Mussa by the neck, and started chocking Mr. Mussa.

19. Officer Abdulkadir chocked Mr. Mussa for approximately 15 seconds, during which time Mr. Mussa could not breathe or talk.

20. As he was choking Mr. Mussa, Officer Abdulkadir also punched Mr. Mussa once in his right eye.

21. Officer Abdulkadir then released Mr. Mussa's neck, immediately kicked Mr. Mussa once in his right leg, and closed the rear squad door.

22. While Officer Abdulkadir was assaulting Mr. Mussa, Officer Yang stood by and watched.

23. After the assault, Officers Abdulkadir and Yang both got back into the squad. Mr. Mussa again explained to Officer Abdulkadir, "I didn't call you stupid." Officer Abdulkadir replied, "I don't care—you're stupid." Officer Abdulkadir then stated, "Go home stupid." The Officers then exited the squad, ordered Mr. Mussa out, took off his handcuffs, and released Mr. Mussa from custody.

24. Officers Abdulkadir and Yang then got back into their squad and drove away from the scene to an area near Washington Avenue. Mr. Mussa later found out that Officer Abdulkadir instructed M.A. and L.D. not to tell anyone about what they just saw and released them from custody even though he arrested them earlier and was planning on taking them into custody prior to the incident described above involving Mr. Mussa. Mr. Mussa also found out that, while talking with M.A. and L.D., Officer Abdulkadir referred to Mr. Mussa as "Habesh."

25. "Habesh" is a term used to describe a certain ethnic group of people living in Ethiopia. "Habesh" is an ethnic slur and has the same connotations for some Ethiopian people as the term "Nigger" for African-Americans.

26. After having been assaulted by Officer Abdulkadir, Mr. Mussa was in pain and dizzy and became disoriented. Mr. Mussa could not get home without assistance and sat down on the sidewalk in the same area where he was released by the Defendant Officers.

27. While sitting on the sidewalk, Mohamed Farah, Mr. Mussa's acquaintance, stopped by and asked Mr. Mussa whether he needed some help. Mr. Mussa asked Mr. Farah to call an ambulance, which he did.

28. Mr. Mussa observed the Defendant Officers parked in their squads approximately one block away.

29. Mr. Mussa then saw the ambulance driving towards him, but the ambulance turned around and left because it was called off by the Defendant Officers.

30. Shortly thereafter, another one of Mr. Mussa's acquaintances approached Mr. Mussa and called another ambulance.

31. At this time, the Defendant Officers came back, and Defendant Officer Abdulkadir stated to Mr. Mussa, "You're still here, Habesh?" Officer Abdulkadir then handcuffed Mr. Mussa and ordered him back inside the squad. M.A. and L.D. were no longer in the back of the squad at this time.

32. At approximately 10:00 p.m., the ambulance arrived and a paramedic examined Mr. Mussa's injuries and took photographs.

33. The Defendant Officers did not release Mr. Mussa and detained Mr. Mussa inside the back of their squad for approximately two hours.

34. At approximately 12:00 a.m. (midnight), Officer Abdulkadir stated to Mr. Mussa that it was past curfew and that Mr. Mussa will now have to go to the City Hall juvenile department to be processed for a curfew violation. Officer Abdulkadir then drove Mr. Mussa to the Minneapolis City Hall and dropped him off on a curfew violation.

35. At all times during the events described above, the Defendant Police Officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

36. Mr. Mussa was released from the Minneapolis City Hall during the early morning hours of July 26, 2011. At this time, Mr. Mussa was experiencing severe pain and swelling around his right eye, where he was punched by Officer Abdulkadir, as well as a headache.

37. Later that morning, Mr. Mussa visited a hospital due to the severe pain he was experiencing and to treat the injuries caused by Officer Abdulkadir. Mr. Mussa was inspected by a doctor and prescribed medications to alleviate the pain.

38. As a result of the Defendant Officers' assault, Mr. Mussa suffered severe pain and suffering, physical discomfort, headaches, dizziness, and bruising and swelling on his face.

39. As a result of the Defendant Officers' assault and misconduct, Mr. Mussa also suffered severe emotional distress, including depression, anxiety, trouble sleeping, and constant feeling of insecurity and fear of the police.

## **INJURIES SUFFERED**

40. As a direct and proximate result of the said acts of the Defendant Police Officers, Plaintiff Ibsa Mussa suffered the following injuries and damages:

    a. Violation of his constitutional right to free speech under the First Amendment to the United States Constitution;

    b. Violation of his constitutional right to be free from unreasonable seizures of his person under the Fourth Amendment to the United States Constitution;

    c. Violation of his constitutional right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution;

    d. Physical pain and suffering;

    e. Emotional trauma and suffering.

41. The actions of the Defendant Police Officers violated the following clearly established and well settled federal constitutional rights of Plaintiff Ibsa Mussa:

    a. Right to free speech;

    b. Freedom from the unreasonable seizure of his person;

    c. Freedom from the use of excessive, unreasonable, and unjustified force against his person;

    d. Right to equal protection of the laws.

## CLAIMS FOR RELIEF

### COUNT I: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION AGAINST INDIVIDUAL DEFENDANTS

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang, through their actions, acting under the color of state law, violated Mr. Mussa's constitutional right to free speech under the First Amendment to the United States Constitution. Specifically, Mr. Mussa exercised his right to free speech protected by the First Amendment when he commented on the Defendant Officers' decision to issue him a citation for riding his bicycle without a light. The Defendant Officers took action against Mr. Mussa that was sufficiently serious to chill a person of ordinary firmness from engaging in protected speech when they assaulted Mr. Mussa without justification while he was handcuffed in the back of the squad. The Defendant Officers assaulted Mr. Mussa in retaliation for exercising his First Amendment right to free speech.

44. As a result of these constitutional violations, Mr. Mussa suffered damages as aforesaid.

**COUNT II: 42 U.S.C. § 1983 – UNREASONABLE SEIZURE AND EXCESSIVE FORCE AGAINST INDIVIDUAL DEFENDANTS**

45. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

46. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang, through their actions, acting under the color of state law, violated Mr. Mussa's constitutional right to remain free from unreasonable seizures and use of excessive force under the Fourth Amendment to the United States Constitution when Officer Abdulkadir chocked Mr. Mussa, punched Mr. Mussa in the face, and kicked Mr. Mussa in the leg without justification while Mr. Mussa was handcuffed in the back of the squad.

47. As a result of these constitutional violations, Mr. Mussa suffered damages as aforesaid.

**COUNT III: 42 U.S.C. § 1983 – UNREASONABLE SEIZURE, EXCESSIVE FORCE, AND FAILURE TO PROTECT AGAINST OFFICER YANG**

48. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

49. Based on the above factual allegations, Defendant Officer Yang, through his actions, acting under the color of state law, violated Mr. Mussa's constitutional right to remain free from unreasonable seizures and excessive use of force under the Fourth Amendment to the United States Constitution by failing to protect Mr. Mussa from Officer Abdulkadir's excessive use of force. Defendant Officer Yang observed Defendant Officer Abdulkadir assault and use excessive force on Mr. Mussa and had the means and opportunity to prevent it, but nonetheless failed to prevent Officer Abdulkadir's excessive use of force against Mr. Mussa.

50. As a result of these constitutional violations, Mr. Mussa suffered damages as aforesaid.

**COUNT IV: 42 U.S.C. § 1983 – UNREASONABLE SEIZURE AND FALSE ARREST AGAINST INDIVIDUAL DEFENDANTS**

51. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

52. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang, through their actions, acting under the color of state law, violated Mr. Mussa's constitutional right to remain free from unreasonable seizures under the Fourth Amendment to the United States Constitution when the Defendant Officers arrested Mr. Mussa, took him into custody, and confined him in the back of the squad for approximately 2 hours without a warrant and without probable cause to believe that Mr. Mussa had committed a crime.

53. As a result of these constitutional violations, Mr. Mussa suffered damages as aforesaid.

**COUNT V: 42 U.S.C. § 1983 – VIOLATION OF EQUAL PROTECTION OF THE LAWS AGAINST INDIVIDUAL DEFENDANTS**

54. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

55. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang, through their actions, acting under the color of state law, violated Mr. Mussa's constitutional right to the equal protection of the laws. Specifically, Officers Abdulkadir and Yang treated Mr. Mussa, an Ethiopian minority, differently and improperly on the basis of his ethnicity or national origin by assaulting him without justification, arresting him without probable cause, and using a derogatory ethnic slur when speaking to him and about him.

56. As a result of these constitutional violations, Mr. Mussa suffered damages as aforesaid.

**COUNT VI: 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION, UNREASONABLE SEIZURE AND EXCESSIVE FORCE, AND VIOLATION OF EQUAL PROTECTION AGAINST THE CITY OF MINNEAPOLIS**

57. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

58. Prior to July 25, 2010, Defendant City of Minneapolis developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Minneapolis, which caused the constitutional violations of Mr. Mussa's rights.

59. It was the policy and/or custom of the City of Minneapolis to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City of Minneapolis.

60. It was the policy and/or custom of the City of Minneapolis to inadequately supervise and train its employees, including Defendant Officers Abdulkadir and Yang, thereby failing to adequately discourage further constitutional violations on the part of its employees. The City of Minneapolis did not require in-service training or re-training of employees who were known to have engaged in police misconduct.

61. As a result of the above described policies and/or customs, employees of the City of Minneapolis, including Defendant Officers Abdulkadir and Yang, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

62. The above described policies and/or customs demonstrate a deliberate indifference on the part of the City of Minneapolis policymakers to the constitutional rights of persons within and in the custody of the City of Minneapolis and were the cause of the violations of Mr. Mussa's constitutional rights alleged herein.

### COUNT VII: 42 U.S.C. § 2000d – ETHNIC/NATIONAL ORIGIN DISCRIMINATION AGAINST THE CITY OF MINNEAPOLIS

63. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

64. Based on the above factual allegations, the City of Minneapolis, a recipient of federal funding and financial assistance, discriminated against Mr. Mussa on the basis of his ethnicity or national origin. Specifically, Officers Abdulkadir and Yang discriminated against Mr. Mussa, an Ethiopian minority, on the basis of his ethnicity or national origin by

assaulting him without justification, arresting him without probable cause, and using a derogatory ethnic slur when speaking to him and about him.

65. As a result of this discrimination, Mr. Mussa suffered damages as aforesaid.

### COUNT VIII: 42 U.S.C. § 3789d(c) – ETHNIC/NATIONAL ORIGIN DISCRIMINATION AGAINST THE CITY OF MINNEAPOLIS

66. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

67. Based on the above factual allegations, the City of Minneapolis, a recipient of federal funding and financial assistance, discriminated against Mr. Mussa on the basis of his ethnicity or national origin. Specifically, Officers Abdulkadir and Yang discriminated against Mr. Mussa, an Ethiopian minority, on the basis of his ethnicity or national origin by assaulting him without justification, arresting him without probable cause, and using a derogatory ethnic slur when speaking to him and about him.

68. As a result of this discrimination, Mr. Lee suffered damages as aforesaid.

### COUNT IX: MINN. STAT. § 363A.12 – ETHNIC/NATIONAL ORIGIN DISCRIMINATION AGAINST THE CITY OF MINNEAPOLIS

69. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

70. Based on the above factual allegations, the City of Minneapolis discriminated against Mr. Mussa in the access to, admission to, full utilization of, or benefit from a public service because of his ethnicity or national origin. Specifically, Officers Abdulkadir and Yang discriminated against Mr. Mussa, an Ethiopian minority, on the basis of his ethnicity or national origin by assaulting him without justification, arresting him without probable cause, and using a derogatory ethnic slur when speaking to him and about him.

71. As a result of this discrimination, Mr. Mussa suffered damages as aforesaid.

**COUNT X: MINN. STAT. § 611A.79 – BIAS OFFENSE AGAINST ALL DEFENDANTS**

72. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

73. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang committed a bias offense against Mr. Mussa, an Ethiopian minority, under Minn. Stat. § 611A.79. Specifically, the Defendant Officers chocked Mr. Mussa, punched Mr. Mussa in the eye, and kicked Mr. Mussa without justification while he was handcuffed in the back of the squad.

74. The Defendant Officers' conduct constitutes the crime of Assault under Minn. Stat. §§ 609.02 and 609.221 – 609.224, and the Defendant Officers assaulted Mr. Mussa because of his ethnicity or national origin.

75. As a direct and proximate result of this bias offense, Mr. Mussa suffered damages as aforesaid.

**COUNT XI: ASSAULT AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW**

76. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

77. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang assaulted Mr. Mussa. Specifically, Defendant Officers Abdulkadir and Yang engaged in wrongful, malicious, unlawful, and intentional conduct intended to put Mr. Mussa in immediate, imminent, and direct fear and apprehension of an offensive touching by the Defendant Officers when the Defendant Officers chocked Mr. Mussa, punched Mr. Mussa in the eye, and kicked Mr. Mussa without justification while he was handcuffed in the back of the squad.

78. As a direct and proximate result of this assault, Mr. Mussa suffered damages as aforesaid.

**COUNT XII: BATTERY AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW**

79. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

80. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang battered Mr. Mussa. Specifically, Defendant Officers Abdulkadir and Yang engaged in intentional, offensive, and unpermitted contact with Mr. Mussa when they chocked Mr. Mussa, punched Mr. Mussa in the eye, and kicked Mr. Mussa without justification while he was handcuffed in the back of the squad.

81. As a direct and proximate result of this battery, Mr. Mussa suffered damages as aforesaid.

**COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW**

82. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

83. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang inflicted intentional emotional distress upon Mr. Mussa. Specifically, Defendant Officers Abdulkadir and Yang engaged in intentional or reckless conduct that was extreme and outrageous when the Defendant Officers chocked Mr. Mussa, punched Mr. Mussa in the eye, and kicked Mr. Mussa without justification while he was handcuffed in the back of the squad. The Defendant Officers' conduct caused Mr. Mussa to suffer severe physical and emotional distress.

84. As a direct and proximate result of this intentional infliction of emotional distress, Mr. Mussa suffered damages as aforesaid.

**COUNT XIV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW**

85. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

86. Based on the above factual allegations, Defendant Officers Abdulkadir and Yang negligently inflicted emotional distress upon Mr. Mussa. Specifically, Defendant Officers Abdulkadir

and Yang engaged in negligent conduct that placed Mr. Mussa in a zone of danger of physical impact created by the negligence of the Defendant Officers when the Defendant Officers chocked Mr. Mussa, punched Mr. Mussa in the eye, and kicked Mr. Mussa without justification while he was handcuffed in the back of the squad. As a result of this negligent conduct, Mr. Mussa feared for his safety and suffered severe emotional distress with attendant physical manifestations.

87. As a direct and proximate result of this negligent infliction of emotional distress, Mr. Mussa suffered damages as aforesaid.

## RELIEF REQUESTED

**WHEREFORE, the Plaintiff requests that this Court grant the following relief:**

a. Issue a declaratory judgment declaring that Defendants violated Plaintiff's constitutional right to free speech under the First Amendment to the United States Constitution;

b. Issue a declaratory judgment declaring that Defendants violated Plaintiff's constitutional right to remain free from unreasonable seizures and excessive use of force under the Fourth Amendment to the United States Constitution;

c. Issue a declaratory judgment declaring Defendants violated Plaintiff's constitutional right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution;

d. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's constitutional right to free speech under the First Amendment to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from this violation;

e.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's constitutional right to remain free from unreasonable seizures and excessive use of force under the Fourth Amendment to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from this violation;

f.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's constitutional right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from this violation;

g.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants discriminated against Plaintiff based on his ethnicity or national origin in violation of 42 U.S.C. §§ 2000d and 3797d(c) as well as the Minnesota Human Rights Act, Minn. Stat. § 363A.12, and that Defendants are liable to Plaintiff for all damages resulting from these violations;

h.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants committed a bias offense against Plaintiff under Minn. Stat. § 611A.79, and that Defendants are liable to Plaintiff for all damages resulting from this violation;

i.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants committed the torts of assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress under Minnesota state law and that Defendants are liable to Plaintiff for all damages resulting from these torts;

j.  Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

k.  Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

l.  Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988 and Minn. Stat. § 363A.33;

m.  Award such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF, IBSA A. MUSSA, HEREBY DEMANDS A JURY TRIAL.**

Dated: July 18, 2011                    By: s/ Zorislav R. Leyderman
                                                                         ZORISLAV R. LEYDERMAN
                                                                         Attorney License No. 0391286
                                                                         Attorney for Plaintiff
                                                                         The Law Office of Zorislav R. Leyderman
                                                                         701 4th Avenue South, Suite 500
                                                                         Minneapolis, MN 55415
                                                                         Telephone: (612) 876-6626
                                                                         Email: zrl@ZRLlaw.com