UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IBSA ALIYI MUSSA, | Case No. 11-CV-1967 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| OFFICER MUKHTAR ABDULKADIR, in his individual and official capacities; OFFICER YANG, in his individual and official capacities; and CITY OF MINNEAPOLIS, | |
| Defendants. | |

Zorislav R. Leyderman, LAW OFFICE OF ZORISLAV R. LEYDERMAN, for plaintiff.

Darla J. Boggs and C. Lynne Fundingsland, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendants.

This civil-rights action arises out of a July 2010 encounter between plaintiff Ibsa Mussa and defendants Mukhtar Abdulkadir and Ka Yang, both of whom are employed as police officers by defendant the City of Minneapolis ("the City"). Mussa brought a 14-count complaint, making numerous claims against the officers and the City under 42 U.S.C. § 1983 and state law.

This matter is before the Court on defendants' motion for summary judgment. Shortly before the hearing, the parties stipulated to the dismissal of certain claims, and Mussa abandoned other claims at the hearing, leaving the following claims: (1) Count I — First Amendment retaliation against Abdulkadir and Yang; (2) Count II — excessive force against Abdulkadir; (3) Count III — excessive force against Yang; (4) Count IV — unreasonable seizure and false arrest against Abdulkadir and Yang; (5) Count V — Equal Protection violation against

Abdulkadir; (6) Count XI — assault against Abdulkadir and the City; and (7) Count XII — battery against Abdulkadir and the City.

For the reasons stated below, defendants' motion is granted in part and denied in part. Specifically, defendants' motion is granted as to Mussa's excessive-force claims against Abdulkadir and Yang (Counts II and III) and denied in all other respects.

I.  BACKGROUND

The facts are sharply disputed, but, taking the record in the light most favorable to Mussa, a jury could find the following:

Mussa is an immigrant from Ethiopia.  Mussa Dep. 9.  On July 25, 2010, at about 9:15 p.m., Mussa was riding his bicycle on a sidewalk in the Cedar-Riverside neighborhood of Minneapolis.  Mussa Dep. 15, 42.  Mussa, who would have been about 17 years old at the time, did not have a light on his bicycle.  Mussa Dep. 7, 21.  Mussa noticed that there were police officers — who turned out to be Abdulkadir and Yang — searching people on the sidewalk. Mussa Dep. 16, 19.  Two detainees were sitting in the officers' squad car.  Mussa Dep. 17.

Abdulkadir approached Mussa and arrested him for not having a light on his bicycle. Mussa Dep. 21.  Abdulkadir handcuffed Mussa and put him in the squad car, telling Mussa that he would be getting a ticket.  Mussa Dep. 21.  Mussa protested against being detained in the squad car, calling it "stupid."  Mussa Dep. 22.

In response to Mussa's "stupid" remark, Abdulkadir put Mussa in a choke hold, causing Mussa to lose consciousness for about 15 seconds.  Mussa Dep. 22.  Abdulkadir then hit and kicked Mussa, once on the leg and once in the face.  Mussa Dep. 24-25.  While Abdulkadir was

assaulting Mussa, Yang was sitting in the front of the squad car, looking the other way.[1]  Mussa Dep. 27.  Abdulkadir then gave Mussa a ticket and released him.  Mussa Dep. 24-25.  Mussa asked for an ambulance, but the officers refused to call one.  Mussa Dep. 26.  Before leaving, Abdulkadir called Mussa "habesh," which is an ethnic slur.[2]  Mussa Dep. 25, 45; Leyderman Aff. Ex. 2 at 2.

After the officers left, Mussa sat on the sidewalk, dazed.  Mussa Dep. 26-27.  A bystander called an ambulance.  Mussa Dep. 28.  When the ambulance was nearby, the officers reappeared, and Abdulkadir told the ambulance to leave.  Mussa Dep. 28.  Abdulkadir handcuffed Mussa again and put him back in the squad car.  Mussa Dep. 29.  He also referred to Mussa as "habesh" several more times.  Mussa Dep. 45.  Bystanders called for another ambulance.  Mussa Dep. 29.  At some point, Abdulkadir pulled out a gun because he did not want the bystanders to help Mussa.  Mussa Dep. 56.

When the second ambulance arrived, the paramedics took photographs of Mussa while laughing at him.  Mussa Dep. 29.  The paramedics did not examine or treat Mussa.  Mussa Dep. 30.  After the paramedics left, Abdulkadir and Yang drove around with Mussa in the car for several hours until curfew, at which point they took Mussa to jail.  Mussa Dep. 30, 48-49.

---

[1] Mussa's testimony on this point is somewhat ambiguous.  He first testified that "[w]hen Officer Muktar [sic] was hitting me, Officer Yang was just sitting and watching."  Mussa Dep. 27.  Two questions later, however, Mussa testified that "[w]hen Officer Muktar [sic] came over to my side, he covered me with his body and Officer Yang was looking the other way."  Mussa Dep. 27.  Although his initial testimony could be construed to mean that Yang was watching the assault, Mussa admits in his briefing that Yang was looking the other way.  ECF No. 29 at 14-15.  Presumably, Mussa's testimony should be understood to mean that Yang was "watching" or dealing with the other two detainees in the squad car.

[2] The spelling of this word varies in the record between "habesh" and "habash."

The next day, after he was released from jail, Mussa went to the doctor. Leyderman Aff. Ex. 3. He complained of a headache and pain and swelling below his right eye.[3] *Id.* at 1. The doctor recommended ice packs and Ibuprofen. *Id.* at 2. Three days later, Mussa returned to the doctor when his pain worsened. Mussa Dep. 32. The doctor prescribed Naproxen. Leyderman Aff. Ex. 3 at 4.

Mussa continues to suffer headaches and fear of the police. Mussa Dep. 39-40. He has not sought any treatment for his emotional issues, however, nor has he sought any further treatment for his headaches. Mussa Dep. 33, 53, 68.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Defendants argue that the Court should disregard certain aspects of Mussa's account because they are contradicted by other portions of the record and because Mussa's story has

---

[3]The Court notes that Mussa's medical records indicate that he reported to the doctor that he had been suffering from a headache for *two* days and, separately, that he had been struck the night before. Defendants do not make anything of this discrepancy, and the Court therefore ignores it.

changed in some respects over time.  There is no doubt that Mussa has credibility problems and that many aspects of his story are difficult to believe.  But determining whether Mussa is credible is the function of the jury, not the judge.  Moreover, many of Mussa's inconsistencies concern minor or irrelevant details, and some of the inconsistencies may reflect the fact that Mussa is not a native English speaker.  The Court therefore rejects defendants' argument that it should disregard some of Mussa's testimony in determining whether there are factual issues for trial.

### B.  Excessive Force

#### 1.  Abdulkadir

Abdulkadir argues that, because he inflicted only de minimis injuries on Mussa, he is entitled to qualified immunity on Mussa's excessive-force claim under *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011).  In *Chambers*, the Eighth Circuit held that a plaintiff need not show more than de minimis injuries in order to prevail on a claim of excessive force.  *Id.* at 906-08.  But because the Eighth Circuit's previous case law had not been clear on this point, the police officers who had been sued in *Chambers* — and who had inflicted only de minimis injuries on the plaintiff — were found to be entitled to qualified immunity.  *Id.* at 908-09.  Abdulkadir argues that, because the incident in this case took place before *Chambers* was decided, and because he inflicted only de minimis injuries on Mussa, he too is entitled to qualified immunity.  The Court agrees.

This case is squarely controlled by *Chambers*.  Mussa does not dispute that Abdulkadir had the right to detain him for not having a light on his bicycle.  Because Abdulkadir had the right to detain Mussa, he had the right to use some degree of force.  *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest or investigatory stop necessarily carries with it

the right to use some degree of physical coercion or threat thereof to effect it."). This sets Mussa's case apart from cases in which, under the plaintiff's version of the facts, the officer did not have the right to make an arrest or otherwise detain the plaintiff. *Cf. Nguyen v. Lokke*, No. 11-CV-3225, slip. op. at 7 (D. Minn. Sept. 4, 2013) ("When there is no right to seize a citizen — that is, when there is no right to detain a citizen even momentarily — then there is also no right to use force against that citizen."); *Smith v. Appledorn*, No. 11-CV-2966, 2013 WL 451320, at *3 (D. Minn. Feb. 6, 2013) ("before a police officer can use physical force, the arrest or investigatory stop itself must be justified").

Mussa argues that, even though Abdulkadir had the right to detain him, Abdulkadir had no right to use force against him once Mussa was handcuffed and secured in the squad car. The problem with this argument, though, is that the very same situation was present in *Chambers*. After Chambers was handcuffed and on the floor, an officer kicked him and pressed his foot on Chambers's back. *Chambers*, 641 F.3d at 902. Chambers was then placed in a squad car, where another officer choked him and kicked the back of his seat. *Id.* The officers also adjusted Chambers's seat so that Chambers's head was nearly touching the dashboard and then drove erratically so that Chambers was jerked back and forth (presumably causing Chambers's head to hit the dashboard). *Id.* All of this happened after Chambers had been handcuffed and brought under control. Yet the Eighth Circuit nevertheless found that the officers were entitled to qualified immunity. *Id.* at 908-09. In short, the fact that Mussa was handcuffed and in the squad car does not distinguish this case from *Chambers*. So long as Mussa's injuries were de minimis, *Chambers* dictates that Abdulkadir is entitled to qualified immunity.

With respect to those injuries: Mussa alleges that he suffered bruises and swelling and continues to suffer persistent headaches and fear. Mussa was not treated at a hospital on the night of the incident, however, and over the next few days, doctors merely prescribed mild painkillers. Mussa has not sought any further treatment for any of his injuries. Under these facts, Mussa's injuries must be considered de minimis. *See LaCross v. City of Duluth*, 713 F.3d 1155, 1157-58 (8th Cir. 2013) (episodes of anxiety resulting from use of Taser are de minimis injury); *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) ("[r]elatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were de minimis injuries"); *Andrews v. Fuoss*, 417 F.3d 813, 815-16, 818 (8th Cir. 2005) (blow that made plaintiff "see stars" and left her with a sore neck and "horrible, horrible" headache caused only de minimis injury); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (allegations of nerve damage, in the absence of medical evidence that plaintiff suffered any long-term injury, were insufficient to show that injuries were more than de minimis).

Because Abdulkadir unquestionably had the right to use some degree of force on Mussa, and because Mussa's injuries were de minimis, Abdulkadir is entitled to qualified immunity on Mussa's excessive-force claim. Abdulkadir's motion for summary judgment on that claim is therefore granted.

2. Yang

Mussa also brings an excessive-force claim against Yang, alleging that Yang is liable for failing to protect him from Abdulkadir's use of force. But if a reasonable officer in Abdulkadir's position would not have known that he was using excessive force against Mussa, then a

reasonable officer in Yang's position would not have known that he had a duty to protect Mussa from that use of force. Yang is therefore also entitled to qualified immunity.

Moreover, it is undisputed that Yang was sitting in the front seat of the squad car and did not see the assault. No reasonable jury could conclude that Yang knew that Abdulkadir would assault Yang or that Yang had the opportunity to prevent that assault. *See Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009) (an officer may be liable for failing to prevent the use of excessive force only when he had reason to know that excessive force would be used and had both the opportunity and means to prevent it). Yang's motion for summary judgment on the excessive-force claim against him is therefore granted.

### C. First Amendment Retaliation

Mussa alleges that Abdulkadir violated the First Amendment by choking and hitting him in retaliation for Mussa calling his arrest "stupid."[4] To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) the defendant took action against him that was sufficiently serious to chill a person of ordinary firmness from engaging in the protected activity; and (3) the defendant took the adverse action in retaliation for the protected activity. *See Zutz v. Nelson*, 601 F.3d 842, 848-49 (8th Cir. 2010). The defendant's retaliatory motive must be a but-for cause of the retaliation; a plaintiff cannot recover if the defendant would have taken the same adverse action even in the absence of the improper motive. *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007).

---

[4]Mussa did not expressly dismiss this claim as against Yang, but he did not address the claim against Yang in his brief. *See* ECF No. 29 at 31. Even if Mussa had not abandoned the claim, the Court would grant Yang's motion for summary judgment. Yang did not choke or punch Mussa and, as noted, no reasonable jury could conclude that Yang knew that Abdulkadir would assault Mussa or that Yang could have prevented the assault.

Abdulkadir seeks summary judgment on this claim essentially on the basis that no reasonable jury could believe Mussa's version of events. As discussed, however, the Court rejects the argument that it is free to disregard portions of Mussa's testimony. Abdulkadir's motion for summary judgment on this claim is therefore denied.

### D.  Unreasonable Seizure

Mussa alleges that his second arrest was an unreasonable seizure in violation of the Fourth Amendment. Abdulkadir and Yang move for summary judgment, arguing that the arrest was supported by probable cause. Specifically, the officers argue that there was probable cause to arrest Mussa for a curfew violation and for filing a false police report.

With respect to the alleged curfew violation, however, there are factual disputes about the timing of the arrest. Mussa testified that the officers arrested him, drove him around for several hours until curfew, and then took him to jail. If Mussa's testimony is true, then the officers did not have probable cause to arrest Mussa for a curfew violation.

Likewise, factual disputes preclude the Court from finding that there was probable cause to arrest Mussa for filing a false police report. The "false police report" was Mussa's complaint that Abdulkadir had choked and punched him. Because there is a factual dispute about whether Mussa's complaint was true, the Court cannot find, as a matter of law, that there was probable cause to arrest Mussa.

### E.  Equal Protection

Mussa brings an equal-protection claim against Abdulkadir, alleging that Abdulkadir arrested and assaulted him on the basis of his Ethiopian ethnicity. Abdulkadir argues that there is no evidence of discriminatory intent and that Mussa's Equal Protection claim is precluded

because Abdulkadir had probable cause to arrest Mussa the first time for not having a light on his bicycle.

Abdulkadir's contentions are without merit. Mussa testified that Abdulkadir repeatedly referred to him using an ethnic slur, which is direct evidence of discriminatory intent. *See Clark ex rel. T.M.J. v. Pielert*, No. 07-CV-3649, 2009 WL 35337, at *8 (D. Minn. Jan. 5, 2009). In addition, a plaintiff need not prove lack of probable cause to prevail on a claim of selective enforcement under the Equal Protection Clause. *See Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003). Abdulkadir's motion for summary judgment on this claim is denied.

### F. Assault and Battery

Finally, Mussa brings claims of assault and battery against Abdulkadir and the City. Defendants argue that they are entitled to official immunity on these claims.

"The doctrine of official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a wilful or malicious wrong." *Rico v. State*, 472 N.W.2d 100, 106-07 (Minn. 1991). In this context, malice means "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Id.* at 107 (citation and quotations omitted). In general, when a municipal employee is protected by official immunity, the municipality is entitled to vicarious official immunity. *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 508 (Minn. 2006).

The Court has concluded that Abdulkadir is entitled to qualified immunity on Mussa's excessive-force claim because a reasonable officer in Abdulkadir's position would not have known that he was violating Mussa's rights. For that reason, to the extent that Mussa's assault

and battery claims simply mirror his excessive-force claim, Abdulkadir and the City are entitled to official immunity. *See Grady v. Becker*, 907 F. Supp. 2d 975, 985-86 (D. Minn. 2012).

But Mussa has also brought an Equal Protection claim on the basis that the assault and battery were motivated by ethnic bias. This allegation, and the evidence supporting it, is sufficient to show the willful violation of a known right. Abdulkadir and the City's motion is therefore denied on Mussa's assault and battery claims to the extent that Mussa alleges that the assault and battery were motivated by ethnic bias.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [ECF No. 23] is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED IN PART AND DENIED IN PART as to Count I. The motion is GRANTED insofar as Count I pertains to defendant Ka Yang and DENIED insofar as Count I pertains to defendant Mukhtar Abdulkadir.

3. The motion is GRANTED as to Counts II and III (plaintiff's excessive-force claims).

4. The motion is GRANTED as to the claims plaintiff abandoned at the March 25, 2013 hearing (Count VII, Count VIII, Count IX, Count X, Count XIII, and Count XIV).

5. The motion is GRANTED IN PART as to Counts XI and XII, to the extent that those claims simply mirror plaintiff's excessive-force claim. The motion is

    DENIED IN PART as to Counts XI and XII, to the extent that plaintiff contends that the assault and battery were motivated by ethnic bias.

  6. The motion is DENIED in all other respects.

Dated: September 5, 2013       s/Patrick J. Schiltz
                    Patrick J. Schiltz
                    United States District Judge